IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY

**HOPE LEANNE ANGELL,**

    **Plaintiff,**

**v.**                                                    **Civil Action No. 5:18-cv-01229**

**NANCY A. BERRYHILL,**
**ACTING COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Memorandum in Support of Summary Judgment (ECF No. 11), Defendant's Brief in Support of Defendant's Decision (ECF No. 12) and Plaintiff's Reply to Brief in Support of Defendant's Decision (ECF No. 13). This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's applications for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

### Background

Claimant, Hope Leanne Angell, filed an application for DIB on February 12, 2015, and an application for SSI on June 22, 2015. Claimant alleged disability beginning December 23, 2014. The claims were denied initially on June 1, 2015, and upon reconsideration on September 8, 2015. Claimant filed a request for hearing on October 16, 2015. A video hearing was held on July 6, 2017, with Claimant appearing in Mt. Hope, West Virginia and the Administrative Law Judge (ALJ) presiding over the hearing from Charleston, West Virginia. The ALJ denied Claimant's applications on October 2, 2017. On October 6, 2017, Claimant requested the Appeals Council

review the ALJ's decision. The Appeals Council denied Claimant's request for review on July 13, 2018 (Tr. at 1-6). Subsequently, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520 and 416.920 (2018). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a) and 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b) and 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* §§ 404.1520(c) and 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* §§ 404.1520(d) and 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(e) and 416.920(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-869 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and

claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f) and 416.920(f) (2018).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

*(c) Rating the degree of functional limitation.*

(1)    Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.

(2)    We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the

3

amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3)    We have identified four broad functional areas in which we will rate the degree of your functional limitation:

Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4)    When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the

claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section. 20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since December 23, 2014. Claimant meets the insured status requirements through December 31, 2019 (Tr. at 12). Under the second inquiry, the ALJ found that Claimant suffers from the medically determinable impairments scoliosis, depression, anxiety and posttraumatic stress disorder (Tr. at 13). However, under the third inquiry the ALJ found that Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. At the fourth inquiry, the ALJ found that Claimant has the residual functional capacity (RFC) to perform a sedentary work, with the following additional non-exertional limitations: she is limited to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; sit for 6 hours as well as stand and/or walk for 2 hours in an 8-hour workday; she would be limited to simple routine repetitive tasks but not at a production rate pace; she could have

occasional interaction with coworkers and supervisors, but no interaction with the public; and she would need a low stress work environment (no production quotas) (Tr. at 15). The ALJ found that Claimant can perform jobs in the national economy such as product inspector, bench worker and grader/sorter (Tr. at 19). Accordingly, the ALJ denied Claimant's application for SSI (Tr. at 20).

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Cellebreze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

## Claimant's Background

Claimant was born on July 26, 1974 (Tr. at 314). She graduated from high school. Claimant attended two years of college studying court reporting and medical transcription, although she did not graduate with a degree (Tr. at 104). Claimant has vocational training from

"nail tech school." (*Id.*) Claimant lives with her two daughters (Tr. at 119). Her parents live less than a mile away. (*Id.*)

## The Medical Record

The medical record has been adopted, as set out in the Plaintiff's Memorandum in Support of Summary Judgment, Defendant's Brief and the ALJ's decision to the extent as follows.

### Crystal Mitchell, PA-C

In March 2014, Claimant was seen by Crystal Mitchell, PA-C (Tr. at 455). On examination, Claimant had a normal appearance and was fully oriented. In August 2014, Claimant had no psychiatric complaints, and an examination revealed that she was oriented x 3, had intact recent and remote memory, intact judgment and insight, and a normal mood and affect (Tr. at 703). In September 2014, Claimant reported that she was experiencing some personal problems including issues relating to snakes in her workplace, a divorce, the death of her first husband, and some issues with her daughter (Tr. at 457). On examination, Claimant had a normal appearance and was fully oriented. (*Id.*)

In December 2014, Claimant reported that she had been having panic attacks, difficulty going places, and trouble concentrating (Tr. at 459). Upon assessment, Ms. Mitchell reported that Claimant had anxiety (Tr. at 460). Ms. Mitchell's notes reflect that Claimant would be off work for a "couple of weeks" then she would be reevaluated. (*Id.*)

In January 2015, she reported that her anxiety and panic had worsened and she wanted to stay home all the time (Tr. at 396). She also complained about short-term memory loss. On examination, she had a depressed affect, but normal orientation (Tr. at 397). Ms. Mitchell referred Claimant to psychiatrist Noel Jewell, M.D., at Seneca Health for evaluation and treatment. (*Id.*)

Claimant returned to Ms. Mitchell several weeks later after being examined at Seneca

Health (Tr. at 398). Claimant reported she did not feel that she had improved, but stated that she managed to be as active as possible in her kids' lives. (*Id.*) Claimant reported that she was unable to work. (*Id.*) On examination, Claimant had a flat affect, but was fully oriented and denied any suicidal or homicidal ideation (Tr. at 399). Ms. Mitchell gave her another work excuse until she returned to Dr. Jewel on February 17, 2015 (Tr. at 399). Specifically, Ms. Mitchell indicated that it would be more appropriate for Dr. Jewel to decide on Claimant's ability to work since "her problems are in his realm of expertise." (*Id.*)

Claimant returned to Ms. Mitchell in February 2015 and reported that she was doing better with medication, and that she continued to work with a therapist who was helpful and helping her to work through her issues (Tr. at 400). On examination, Claimant had a normal appearance and a normal neurological examination. (*Id.*)

In May 2015, Claimant reported to Ms. Mitchell that her anxiety was bad, but an examination revealed that she was in no distress and was alert and oriented (Tr. at 402). In July 2015, Claimant reported an increase in family stressors (Tr. at 404). She indicated that the prescription of Ativan had been effective, in the past, and requested a prescription. (*Id.*) On July 2, 2015, Ms. Mitchell wrote a letter requesting that Claimant be excused from jury duty (Tr. at 773). The note states that Ms. Mitchell has been treating Claimant for anxiety "for a long time" and that in the past year "it has gotten progressively worse." (*Id.*) The note states that due to Claimant's "frequent panic attacks and agoraphobia," Ms. Mitchell feels "that [Claimant] is not able to participate in jury duty." (*Id.*)

In February 2016, Claimant reported that her mood was stable on medication, but that she still had agoraphobia (Tr. at 700). On examination, Ms. Mitchell described Claimant as "well appearing" (Tr. at 701). Ms. Mitchell noted that Claimant was not in distress, but that Claimant

had an "anxious affect" (Tr. at 701). Ms. Mitchell refilled her prescription for Wellbutrin. (*Id.*) In March 2016, Claimant had no psychiatric complaints, and an examination revealed that she was oriented x 3, had intact recent and remote memory, intact judgment and insight, and a normal mood and affect (Tr. at 697). An examination in May 2016 was identical (Tr. at 694).

In July 2016, Claimant requested an increase in Wellbutrin, and reported that she was anxious and continued to have stress (Tr. at 691). An examination, however, revealed that she was oriented x 3, had intact recent and remote memory, intact judgment and insight, and a normal mood and affect (Tr. at 692). In March 2017, a psychiatric exam again documented that Claimant was oriented x 3, had intact recent and remote memory, intact judgment and insight, and a normal mood and affect (Tr. at 747).

<u>Seneca Health Services</u>

In June 2015, Claimant was examined at Seneca Health (Tr. at 659). Claimant reported that she was nervous, on edge, and experienced conflict with her daughter, brother, and former mother-in-law (Tr. at 659). A mental status examination revealed that she was oriented to person, place, time, and situation; had adequate attention and concentration; intact immediate, recent, and remote memory; clear and logical thought processes; a nervous mood and edgy affect; but no suicidal or homicidal ideation (Tr. at 660).

In August 2015, Claimant reported feeling more anxious because of problems with her oldest daughter (Tr. at 657). A mental status examination was almost identical to that from June 2015 (Tr. at 657). Later that month, Claimant reported a depressed mood with little motivation and functionality (Tr. at 653). She reported that she avoided crowds and experienced three or four panic attacks each day. (*Id.*) She also reported that Wellbutrin was helpful. (*Id.*) A mental status examination revealed that she was neatly and casually dressed, alert and oriented, exhibited fluent

and non-pressured speech, had intact recent and remote memory, satisfactory attention and concentration, appropriate language, appropriate fund of information, connected and logical thought processes, appropriate associations, no hallucinations, an anxious mood and congruent affect, good insight and judgment, and no suicidal or homicidal ideation (Tr. at 654). Claimant was diagnosed with agoraphobia. (*Id.*)

### FMRS Health Systems in Summers County, West Virginia

In December 2016, Claimant was examined by Glendy Africano at FMRS Health Systems (Tr. at 732). Claimant reported that she experienced panic attacks and had difficulty being in public places because she was raped when she was 18 years old. (*Id.*) Claimant reported that she had worked as a medical transcriptionist for six years,[1] but that she stopped working in 2014 after her divorce because she was unable to focus[2] (Tr. at 735). Claimant also reported that she experienced no problems working or going to school. (*Id.*) A mental status examination revealed a cooperative attitude, no psychomotor abnormalities, fair eye contact, good speech, an anxious mood, slightly restricted affect, logical thoughts, fair insight and judgment, normal perceptions, and no delusions (Tr. at 736-737). Claimant agreed to participate in behavioral health services, but there are no further records.

### James Binder, M.D.

In May 2015, James Binder, M.D., a state agency physician, reviewed the medical evidence and completed a psychiatric review technique form (PRTF) in which he opined that Claimant had no restrictions in her activities of daily living; moderate difficulties in maintaining

---

[1] At the hearing on July 6, 2017, Claimant testified that she was a medical transcriptionist for Summers County, West Virginia for 11 years (Tr. at 105).
[2] At the hearing on July 6, 2017, Claimant testified that she stopped working as a medical transcriptionist in 2012 because she was harassed by her supervisor (Tr. at 106). Claimant testified that after 2012, she could not focus or concentrate at work. Claimant testified that in 2014, a snake was dropped on her at work (Tr. at 107).

social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation (Tr. at 164). Dr. Binder indicated that Claimant had depression and anxiety and had recently been referred to a psychiatrist by her primary care practitioner, but that she had normal cognitive functioning and was somewhat socially withdrawn. (*Id.*) Dr. Binder also completed a mental RFC assessment form and indicated that Claimant had no understanding or memory limitations, no sustained concentration or persistence limitations, and no adaption limitations (Tr. at 167-168). Dr. Binder also indicated that Claimant had moderate limitations in her ability to interact with the general public and accept instruction and respond to criticism from supervisors, but was otherwise not significantly limited in her ability to interact socially (Tr. at 168). Ultimately, Dr. Binder explained that despite her limitations, Claimant remained capable of learning and performing basic work-like tasks. (*Id.*)

### Jeff Harlow, Ph.D.

In September 2015, Jeff Harlow, Ph.D., a state agency psychologist, reviewed the medical evidence and concurred with Dr. Binder's opinion (Tr. at 178, 182).

### Tony Goudy, Ph.D.

In June 2017, Claimant was examined by Tony Goudy, Ph.D. (Tr. at 774). Claimant reported that she had bipolar disorder, difficulty dealing with past trauma, frequent panic, and difficulty leaving home (Tr. at 775). A mental status examination revealed that Claimant had good personal care and hygiene; was fidgety throughout the evaluation; tried to cooperate, but was nervous and had a blunted affect; had spontaneous and coherent speech; no perceptual disturbances; was oriented to time, place, person, and circumstance; had intact immediate memory; moderate to marked impairment in recent memory; and a potential impairment in remote memory; impaired concentration; low to average intellectual functioning; and poor

judgment (by her own admission) (Tr. at 778). Dr. Goudy opined that Claimant had marked limitations in the ability to interact with others and maintain concentration, persistence, or pace, and indicated that she met one of the Listings (either 12.04, 12.15, or 12.06).

Dr. Goudy also completed a mental assessment of Claimant's ability to do work-related activities (mental) and opined that Claimant had a range of limitations including no limitations in the ability to maintain personal appearance, moderate limitations in the ability to relate to co-workers and supervisors and understand, remember, and carry out simple job instructions, and marked limitations in the ability to deal with the public, and understand, remember, and carry out complex job instructions (Tr. at 781-783).

## Claimant's Challenges to the Commissioner's Decision

Claimant argues "The ALJ's step three finding and RFC assessment are not supported by substantial evidence because the ALJ failed to properly assess the psychological opinions of record" regarding her mental impairments (ECF No. 11).

In response, Defendant asserts:

> The ALJ, as the fact-finder, is solely responsible for evaluating the medical opinion evidence. Here, even a cursory review of the ALJ's comprehensive decision demonstrates that she evaluated each of the psychological opinions and articulated specific and legally sufficient reasons for the weight she assigned. Substantial evidence supports the ALJ's evaluation of the medical opinion evidence and her decision should be affirmed (ECF No. 12).

### Discussion

The Social Security Act defines "disability" in terms of the effect a physical or mental impairment has on a person's ability to function in the workplace. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 04.1505(a); *see Heckler v. Campbell*, 461 U.S. 458, 459-60 (1983); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("[An impairment] is not necessarily disabling. There must be a showing of related functional loss."). The responsibility for determining whether Claimant is

disabled resides with the Commissioner. 20 C.F.R. § 404.1527(e)(1). To be eligible for disability benefits, Claimant bears the burden of showing not only that she has a medically determinable impairment, but that it is so severe that it prevents her from engaging in her past relevant work or any other substantial gainful activity that exists in the national economy for a 12-month period. 42 U.S.C. §§ 423(d)(1)(A), (d)(2)(A).

In the present case, the ALJ gave the State agency psychological consultants' opinions great weight "based on the consultants' specialized training, program knowledge and consistency with the above-described evidence" (Tr. at 17-18). The ALJ gave Dr. Goudy's opinion based on his evaluation performed in June 2017, partial weight (Tr. at 18). The ALJ stated that Dr. Goudy has specialized training in mental impairments and an examining relationship with Claimant, however, "he somewhat overestimated the claimant's impairments as he did not have benefit of reviewing the fully developed record." (*Id.*) Additionally, the ALJ pointed out that Dr. Goudy completed his examination at the request of Claimant's attorney.

The ALJ gave little weight to the opinion of Claimant's primary care provider, Ms. Mitchell. (*Id.*) The ALJ stated that Ms. Mitchell's opinion that Claimant had progressively worsening anxiety due to "frequent panic attacks and agoraphobia" was given in July 2015, when Claimant was not able to participate in jury duty. The ALJ stated that Ms. Mitchell's opinion[3] does not address Claimant's capabilities to sustain full time work. (*Id.*)

The ALJ gave little weight to Claimant's Global Assessment of Functioning (GAF) scores in the record. (*Id.*) The ALJ stated that:

> GAF ratings are not standardized, which limits direct comparability of ratings assigned by different evaluators, or even by the same evaluator at substantially different times... Also, GAF ratings are not designed to predict outcome. Instead, the ratings are used to

---

[3] Although Claimant briefly mentions the weight the ALJ gave Ms. Michell's opinion in her Memorandum (ECF No. 11), Claimant does not assert any argument regarding Ms. Mitchell's opinion.

> help plan and measure the impact of treatment.  Finally, the GAF scale anchors are very general and there could be a significant variation in how clinicians rate a GAF.  Evaluators rarely note whether the score reflects function, symptoms or both. (*Id.*)

Claimant asserts that the ALJ's third inquiry in the sequential evaluation incorrectly assessed the required criteria to determine whether Claimant's severe mental impairments meets Listings 12.04 or 12.06[4] (ECF No. 11).  Listings 12.04 and 12.06 require, in part, what is commonly referred to as "paragraph B" criteria.  To satisfy the paragraph B criteria, the mental impairment must result in at least one extreme or two marked limitations in a broad area of functioning which are:  understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; or adapting or managing themselves.  A marked limitation means functioning in this area independently, appropriately, effectively and on a sustained basis is seriously limited.   An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis.

Claimant asserts that in making her paragraph B determination, the ALJ referred to the psychological evaluation and report conducted by Dr. Goudy on June 21, 2017, to which partial weight was given (ECF No. 11).  The ALJ gave great weight to the opinions of the State agency psychological consultants (Tr. at 18).  Claimant argues that the ALJ did not reference the State agency psychological consultants' opinion in her paragraph B determination and RFC assessment (ECF No. 11).  Claimant asserts that the ALJ failed to conduct a proper weight analysis of the psychological opinions.

Claimant asserts that the ALJ reasoned the great weight given to the State agency psychological consultants' opinions was because their opinions were based on the consultants' specialized training, program knowledge and consistency with above-described evidence (Tr. at

---

[4] Listing 12.04 covers depressive disorder and Listing 12.06 covers anxiety related disorders.

14

17-18).   Claimant argues that the ALJ said the same thing about Dr. Goudy's training and knowledge but only gave his opinion partial weight (ECF No. 11).   Claimant asserts that all the psychologists have "specialized training" and "program knowledge." (*Id.*) Additionally, Claimant argues that the State agency psychological consultants' review took place approximately 2 years prior to the administrative hearing, therefore, they, like Dr. Goudy, did not have the benefit of reviewing the fully developed record.

Moreover, Claimant asserts that although the ALJ "broadly indicated the State agency opinions were consistent with the evidence selected from the record and cited by her in the decision" she did not reference any specific record or make any connection to demonstrate how the substantial evidence of record was consistent with the nonexamining consultants' opinions (*Id.*).   Claimant argues that the ALJ failed "to satisfy her basic duty of explanation." (*Id.*)

<u>Weight Afforded Medical Opinions</u>

Because the present claims were filed before March 27, 2017,[5] the standards for evaluating medical opinion evidence set forth in 20 C.F.R. § 404.1527 apply. That regulation defines "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." *See* 20 C.F.R. § 404.1527(a)(1). For purposes of the regulation, an "acceptable medical source" includes a licensed physician or psychologist. *Id.* § 404.1502(a). The regulation provides that the ALJ "will evaluate every medical opinion" presented to him, "[r]egardless of its source." *Id.* § 404.1527(c). Generally, however, more weight is given "to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you." *Id.* § 404.1527(c)(1).

---

[5]  For claims filed on or after March 27, 2017, the rules in §§ 404.1520c, 416.920c apply.

<u>Treating Physician</u>

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927. Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." *Ward v. Chater*, 924 F. Supp. 53, 55 (W.D. Va. 1996); *see also*, 20 C.F.R. §§ 404.1527(d)(2), 416.927. The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927. Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact and resolve conflicts of evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1994).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527, 416.927. These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." *Id.* §§ 404.1527(d)(2), 416.927.

16

The ALJ considered Dr. Goudy's June 2017 examination findings and opinion when determining that Claimant's severe impairments did not meet the criteria for Listings 12.04 and 12.06. The ALJ pointed out that although Claimant reported she needed no reminders to take medication or care for her personal needs and was able to pay bills and manage a savings account, Dr. Goudy found that Claimant had a moderate to marked recent memory impairment and moderately impaired remote memory.

The ALJ held that in regards to Claimant's mental impairments, the record fails to support the degree of limitations alleged (Tr. at 17). The ALJ held that treatment notes show general stability demonstrating successful treatment by prescribed medications. The ALJ pointed out that Claimant reported that the prescribed medications and psychotherapy were helpful. The ALJ stated that "This evidence of successful and diminishing treatment for her mental impairments is consistent with stable objective psychological findings." (*Id.*) The ALJ found that Claimant had a moderate limitation in understanding, remembering or applying information (Tr. at 13). The ALJ's finding was very similar to Dr. Goudy's findings that Claimant had a moderate to marked recent memory and moderately impaired remote memory.

Additionally, the ALJ considered Dr. Goudy's findings as part of her determination that Claimant had a marked limitation in interacting with others (Tr. at 14). The ALJ pointed out that during Dr. Goudy's June 2017 examination, Claimant made little eye contact but tried to fully cooperate with the examination and that Claimant had a blunted affect, but coherent and spontaneous speech. (*Id.*) Similarly, the ALJ accounted for Dr. Goudy's findings in the ALJ's determination that Claimant had a moderate limitation in concentrating, persisting or maintaining pace. (*Id.*) The ALJ pointed out that although Dr. Goudy noted that Claimant was unable to

perform serial seven[6] during the June 2017 examination, Claimant acknowledged shopping by phone and computer, retaining the ability to handle her financial affairs and spending time doing word puzzles and crocheting, activities that require focus and attention.

The ALJ considered and discussed Dr. Goudy's findings as part of the ALJ's determination that Claimant did not have two marked limitations needed to satisfy the paragraph B criteria of Listings 12.04 and 12.06. Therefore, substantial evidence supports the ALJ's Listing analysis.

Additionally, the ALJ considered Dr. Goudy's opinion as part of her RFC assessment and stated that Dr. Goudy overestimated Claimant's impairments (Tr. at 18). The ALJ explained that Dr. Goudy did not have the benefit of reviewing the full record including, for example, the mental health opinions from the State agency experts or Claimant's own statements and self-reports. Claimant's statements that she could drive a car, do word puzzles and crochet contradicted Dr. Goudy's findings regarding Claimant's ability to maintain concentration, persistence or pace.

The ALJ adopted Dr. Goudy's findings that Claimant had marked limitations in dealing with the public, and moderate limitations in relating to co-workers and supervisors. The ALJ accounted for these limitations in the RFC by limiting Claimant to only occasional interaction with coworkers and supervisors, but no interaction with the public (Tr. at 15). The ALJ also adopted Dr. Goudy's findings with regard to job instructions and work stress by limiting her to performing only simple routine, repetitive tasks not performed at a production rate pace with no production quotas. (*Id.*) Therefore, the ALJ consideration of Dr. Goudy's opinion as part of the ALJ's RFC is supported by substantial evidence.

---

6 The serial subtraction of seven beginning with the number 100 is a clinical test sometimes used as part of a mental status evaluation of a patient.

In regards to the great weight given to the opinions of the two State agency psychological consultants, Dr. Harlow and Dr. Binder, the ALJ explained that their opinions are consistent with the evidence of record (Tr. at 17-18).  On May 28, 2015, Dr. Binder assessed Claimant to have limitations in social interaction but no limitations in understanding, memory, sustained concentration and persistence (Tr. at 168).  Dr. Binder opined that Claimant was moderately limited in her ability to interact with the general public and her ability to accept instructions and respond appropriately to criticism from supervisors.  (*Id.*)  Dr. Binder found that Claimant was not significantly limited in her ability to maintain socially appropriate behavior, ask simple questions or request assistance, and get along with coworkers or peers.  (*Id.*)   On September 4, 2015, Dr. Harlow reviewed the medical evidence and concurred with Dr. Binder's opinion (Tr. at 178, 182).

The opinions of Dr. Binder and Dr. Harlow were consistent with the ALJ's third inquiry in the sequential evaluation as it was discussed *supra* in the ALJ's decision.  Instead of repeating the findings, the ALJ stated that the two State agency psychological consultants' opinions were consistent with the findings.  Therefore, read as a whole, the ALJ's decision demonstrates that the ALJ evaluated the two State agency psychological consultants' opinions and gave them appropriate weight.  As the fact-finder, the ALJ is responsible for considering the medical opinions of record and weighing each opinion.  20 C.F.R. §§ 404.1527, 416.927.  Accordingly, the ALJ's determination of weight given to medical opinions and her RFC assessment are supported by substantial evidence.

Although, Dr. Goudy's assessment was performed after the assessments of Dr. Binder and Dr. Harlow, Dr. Goudy's assessment does not list Dr. Binder and Dr. Harlow's assessments in his discussion of records reviewed (Tr. at 776).  Dr. Goudy's Review of Records section in his

Psychological Evaluation of Claimant references medical records from December 2010 through December 2016. (*Id.*)

Lastly, Claimant asserts that the ALJ improperly gave partial weight to Dr. Goudy's opinion because the ALJ stated that Dr. Goudy "completed his examination at the behest of the claimant's attorney" (ECF No. 11). However, Claimant has not demonstrated, based on the record as a whole, that the ALJ improperly gave Dr. Goudy's opinion partial weight. Accordingly, the ALJ's decision is supported by substantial evidence in this matter.

Conclusion

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner, DENY Plaintiff's Memorandum in Support of Summary Judgment (ECF No. 11) and DISMISS this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED and a copy will be submitted to the Honorable Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155

(1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Berger and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date:  June 24, 2019

DWANE L. TINSLEY
United States Magistrate Judge